IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASAHI GLASS CO., LTD. and AGC FLAT GLASS NORTH AMERICA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GUARDIAN INDUSTRIES CORP., <br><br> Defendant. | ) ) ) ) ) ) ) Civ. No. 09-515-SLR ) ) ) ) ) |

Steven J. Balick, Esquire, John G. Day, Esquire, Lauren E. McGuire, Esquire and Andrew C. Mayo, Esquire of Ashby & Geddes, Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Michael D. Kaminski, Esquire and Liane M. Peterson, Esquire of Foley & Lardner LLP.

Richard K. Herrmann, Esquire and Mary Matterer, Esquire of Morris James LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Andrew M. Grove, Esquire of Honigman Miller Schwarz and Cohn LLP.

## ** AMENDED MEMORANDUM OPINION

Dated: August 12, 2011
Wilmington, Delaware

~~[signature]~~
ROBINSON, District Judge

## I. INTRODUCTION

Asahi Glass Company, Ltd. and AGC Flat Glass North America, Incorporated ("plaintiffs") brought this action for infringement of U.S. Patent Nos. 6,334,938 ("the '938 patent") and 6,193,856 ("the '856 patent") against Guardian Industries Corporation ("defendant") on July 15, 2009. (D.I. 1) The patents are entitled "target and process for its production, and method for forming, a film having a highly refractive index," and generally disclose a sputtering target to be used for forming a thin transparent oxide film having a high refractive index.[1] Plaintiffs seek an injunction and damages relating to defendant's sales of "Low-E" and "First Surface Mirror" glass products. (*Id.* at ¶¶ 9, 14) Defendant filed its answer as well as counterclaims for noninfringement, invalidity, and unenforceability due to inequitable conduct on December 18, 2009. (D.I. 9) Plaintiffs answered the counterclaims on January 15, 2010. (D.I. 12) The scheduling order entered thereafter in March 2010 provided that amended pleadings were due by August 15, 2010. (D.I. 24) Defendant filed a motion to amend its affirmative defenses and counterclaims to add new allegations of inequitable conduct on March 4, 2011. (D.I. 88) That motion is presently before the court. For the reasons set forth below, defendant's motion is **denied**.

## II. BACKGROUND

Defendant's new defenses and counterclaims relate to two new theories of inequitable conduct, both relating to concealing or misrepresenting the true inventorship

---

[1]The '938 patent was filed as a continuation application claiming priority to the now-issued '856 patent; the patents contain the same specification.

of pending claims to the PTO during prosecution of the '938 and '856 patents. Defendant asserts that plaintiffs filed false declarations and statements during prosecution of the '856 patent in order to overcome a § 102(a) prior art rejection. Specifically, several pending claims (directed to sputter targets) stood rejected based on prior art publication "JP-469,"[2] naming inventors Akira Mitsui ("Mitsui"), Takuji Oyama ("Oyama"), and Kenichi Sasaki ("Sasaki"). Plaintiffs added Sasaki and Oyama as inventors to the pending application and, through declarations, averred that claim 20 of the application was the invention of Mitsui, Oyama and Sasaki and not the invention of other inventors already of record (Otojiro Kida ("Kida"), Eri Suzuki ("Suzuki-Komatsu")[3], and Atsushi Hayashi ("Hayashi")). (D.I. 89, ex. E) The § 102(a) rejection was effectively traversed on these grounds.

During his deposition, on November 17, 2010, Sasaki testified that he was not involved in making sputter targets and has no understanding of applying an undercoat to a substrate for a target (as issued claim 11 of the '856 patent and its dependents require). Sasaki emphasized that this is "outside [his] area." (*Id.*, ex. G) According to defendant, this testimony is directly contrary to Sasaki's declarations to the PTO.

It is also defendant's assertion that the inventorship of the '938 patent was falsified in order to obtain a priority date earlier than JP-469 and obtain issuance of plaintiffs' claims. During prosecution of the '938 patent, the examiner rejected claims

---

[2]Japanese Patent Abstract Publication No. 07-233469, published September 5, 1995.

[3]Ms. Suzuki has since been married and is now known as Ms. Komatsu. To minimize confusion, the court will refer to Ms. Komatsu as "Suzuki-Komatsu."

2

as anticipated and/or obvious in view of JP-469. According to defendant, this rejection was traversed when plaintiffs successfully claimed priority to "JP-074,"[4] which listed Mitsui, Kida and Suzuki-Komatsu as inventors. The priority claim was buttressed by two declarations executed by Suzuki-Komatsu (dated February 13, 1998 and August 13, 1999) confirming that she was an inventor of the '856 and '938 patents.

On November 18, 2010, Suzuki-Komatsu testified that she did not "know what a target is," or a "sputtering target," did not know how they are used, and did not recall her contribution to the inventions. (*Id.*, ex. K)[5] According to defendant, Suzuki-Komatsu's testimony is directly contrary to her declarations to the PTO.

## III. STANDARD

"[L]eave to amend 'shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). The court may exercise its discretion to deny leave to amend in situations in which the moving party has delayed seeking leave and the delay "is undue, motivated by bad faith, or prejudicial to the opposing party." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citation omitted). Put another way, where the non-moving party will not suffer "substantial or undue prejudice," "denial [of leave to amend] must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure

---

[4]Defendant cites this reference as Japanese Patent Abstract Publication No. 7-215074, however, this appears to be a mistranscription. JP-074 does not appear to be docketed with defendant's motion, and its publication date is unclear.

[5]Suzuki testified that she did recall "typing," and that "it's possible that [she] might have done analysis" or testing that produced the results reported in the patent, but she was not certain.

3

the deficiency by amendments previously allowed, or futility of amendment." *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (quoting *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413-14 (3d Cir. 1993)). Delay is "undue" when an unwarranted burden is placed on the court or when the requesting party has had previous opportunities to amend. *See Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (citation omitted).

## IV. DISCUSSION

Defendant's request came six months after the August 15, 2010 deadline to amend the pleadings and after the close of fact discovery (*see* D.I. 69); therefore, certain prejudice to plaintiff is inherent on this timeline. In determining whether defendant's delay was undue or unexplained, the court considers the following arguments posed by defendant: (1) although plaintiffs produced their documents prior to November 2010, the majority of the documents were in Japanese and required review by language experts and translators; (2) Suzuki-Komatsu and Sasaki were deposed in November 2010; (3) plaintiffs supplemented their interrogatory responses in November 2010, adding twelve additional claims to the suit; and (4) the claim construction process started in November and continued through January 2011, when the parties filed their joint statement of finalized constructions. The motion at bar was filed shortly thereafter on March 4, 2011.

While plaintiffs do not specifically dispute that their discovery documents required translation, the critical documents to defendant's new inequitable conduct claims – the inventor declarations – were part of the publicly-available file wrappers of

the patents in suit. Defendant does not describe with any particularity which translations or analyses postponed its discovery of its new claims beyond November 2010 – when plaintiff added claim 10 of the '938 patent to the suit,[6] and when Suzuki-Komatsu and Sasaki were deposed.[7] (D.I. 89 at 4, D.I. 100 at 4-5)

Plaintiffs state that their document production was substantially completed by July 16, 2010. (D.I. 97 at 4) Defendant does not argue to the contrary in its reply papers. Aside from a general assertion of delay required for translation and expert review of Japanese documents, there is no particular explanation for why defendant waited from at least November 2010[8] until March 2011 to bring the inequitable conduct claim based on priority to JP-074. Defendant's argument that claim construction was relevant to its delay appears to concern only its theory with respect to the JP-469 reference. That is, defendant argues that prior to claim construction, defendant expected that plaintiffs would proffer a construction that "includ[ed] sintered targets." (D.I. 100 at 3-4) Plaintiffs' position that the claims cover **only** plasma-sprayed targets renders the inventorship directly contrary, in defendant's view, to plaintiffs' interrogatory

---

[6]Defendant asserts that claim 10 provides the "most serious instance of inequitable conduct." (D.I. 100 at 4)

[7]These were fact depositions, as compared to, for example, a 30(b)(6) deposition relating more particularly to patent prosecution or a topic relating to inequitable conduct. The depositions were scheduled and occurred after the deadline for amending pleadings.

[8]Defendant states that it received the deposition transcripts on December 3, 2010. (D.I. 100 at 4)

5

responses[9] and Mitsui and Hayashi's testimony that Kida developed plasma-sprayed targets. (D.I. 89 at 11) Defendant does not explain, however, why the foregoing response and testimony, known at least by November 2010, would not form the basis for an inequitable conduct theory under a claim construction including both sintered and plasma-sprayed targets. (D.I. 100 at 3) Under the broad construction defendant expected, Kida would arguably be an inventor of the claims.

Pursuant to the foregoing, defendant's delay in moving to amend until March 4, 2011 is largely unexplained. While defendant's delay is not egregious, allowing defendant's motion at this late stage would place an unwarranted burden on the court and prejudice plaintiffs in several respects, most notably, opening discovery for the purpose of allowing plaintiffs an opportunity to respond to the new claims cannot be accomplished while maintaining the current trial date.[10] For these reasons, the court denies defendant's motion on the basis of undue delay.

## V. CONCLUSION

Consistent with the foregoing, defendant's motion for leave to amend (D.I. 88) is denied. An appropriate order shall issue.

---

[9]Plaintiffs' answer to interrogatory 15 states that "Mr. Kida, who was a plasma spray engineer, suggested the investigation of plasma-sprayed targets to overcome these problems [with sintered targets]." (D.I. 89, ex. F)

[10]The court is currently booked for trials through 2013; rescheduling a trial of this duration in 2011 or 2012, given the court's current trial schedule, would be a formidable task.