IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASAHI GLASS CO., LTD. and AGC | ) | |
| FLAT GLASS NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-515-SLR |
| | ) | |
| GUARDIAN INDUSTRIES CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 26th day of September, 2011, having reviewed plaintiffs'

*Daubert* motion to exclude the testimony of defendant's expert, Dr. Mark Horn, and the

papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 118) will be reviewed after the record is

supplemented, as follows:

1.  Rule 702 of the Federal Rules of Civil Procedure allows a qualified witness to

testify in the form of an opinion if the witness' "scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in

issue" and if his/her testimony if the product of reliable principles and methods which

have been reliably applied to the facts of the case.

2.  To the extent that plaintiffs contend that Dr. Horn is unqualified to testify as an

expert in film-forming or sputtering target work during the time the inventions at bar

were created, the court denies the motion.  An expert qualified by education to testify

on a subject need not have been a person of ordinary skill in the art at the time of the

invention; that goes to the weight of the evidence, not its admissibility.

3. The sufficiency of a patent's written description is a factual determination of whether the specification, in its four corners, describes "an invention understandable to [a person of ordinary skilled in the art at the time the invention was filed] and show that the inventor[s] actually invented the invention claimed." *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).   Factors such as "the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue" are useful in this regard.  *Id.* (citation omitted).

4.  The enablement requirement is a question of law based on underlying factual inquiries.  *See In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).  To satisfy the enablement requirement, a specification must teach those skilled in the art how to make and to use the full scope of the claimed invention without undue experimentation.  *See Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997).  The "*Wands*" factors should be considered in determining whether the experimentation required (regardless of the quantity) is merely routine or whether it is undue, as follows:  (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (6) the predictability of the art; and (7) the breadth of the claims.  *Wands*, 858 F.2d at 737.

5.  The court agrees with plaintiffs that Dr. Horn's opinions on written description

and enablement are not helpful to the jury in these regards.  As an initial matter, Dr.

Horn did not first provide a claim construction against which the adequacy of the

description could be measured.  Dr. Horn's opinion that he cannot tell exactly what the

three inventors invented vis a vis the others is not relevant to written description, nor is

his speculation that plaintiffs would not have purchased targets from others if they had

possession of their invention.  Dr. Horn states generally that the specification does not

describe the full range of values claimed (sintered TiOx targets, x-values, and cylindrical

targets); these allegations are unaccompanied by factual support.  While Dr. Horn

provides foundation for his opinion of non-enablement, he does little more than

conclude that the cited evidence demonstrates that Asahi did not know how to make

large planar targets, C-Mag targets, or other targets capable of use with high power in

1996.  Dr. Horn does not describe the state or skill in the art or explain why the

experimentation required (based on the disclosure) would be "undue."[1]  Insofar as Dr.

Horn's § 112 opinions are not helpful to the jury in its factual determinations, they will

be excluded.

6.  An expert witness who has been proffered to opine on the validity of a patent

must follow the required steps of a validity analysis, that is, to construe the asserted

claims of the patent to determine their subject matter, and then to perform a limitation-

---

[1]In his supplemental report, Dr. Horn states that the field is unpredictable as evidenced by discovery from third party suppliers that they could not use the patents in suit to arrive at their TiOx targets.  Even assuming that this evidence relates to the filing date (1996), and that the evidence is representative of the **hypothetical** "person of ordinary skill in the art," there is little more than a bald assertion that artisans must do testing on actual C-Mag machines in order to arrive at the patented invention (for which Dr. Horn provided no claim scope).

by-limitation comparison of each claim to each prior art reference.  *See Oxford Gene Tech. Ltd. v. Mergen, Ltd.*, 345 F. Supp. 2d 431, 435-37 (D. Del. 2004).  For anticipation, "[t]here must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."  *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1998).  An obviousness inquiry requires a determination of "whether the claimed invention would have been obvious as a legal matter, based on underlying factual inquiries including:  (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the difference between the claimed invention and the prior art, and (4) secondary considerations of nonobviousness."  *Oxford Gene Tech. Ltd.*, 345 F. Supp.2d at 435-36 (citations omitted).  Importantly, even if each limitation of an asserted claim is found in the prior art, "there must be a 'reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success.'"  *Id.* at 436 (citations omitted).

7.  The court has independent reservations about the reliability and helpfulness of Dr. Horn's expert opinion.  Dr. Horn did not construe the claims; he simply recited them.  Although this deficiency would generally be a fatal flaw, it may not be in the case at bar because the parties primarily disputed only one limitation, that is, whether the "formed on" limitation included both sintering and plasma spraying processes.  Dr. Horn included prior art reference including both processes; therefore, the court will not preclude his testimony on this ground alone.

8.  With respect to anticipation and obviousness, the court may preclude Dr.

4

Horn's testimony for his failure to clearly and helpfully execute the second step of the validity analysis, that is, to perform a limitation-by-limitation comparison of each asserted claim to each prior art reference.  In order to satisfy the court that Dr. Horn performed his responsibilities, defendant will have the opportunity to supplement Dr. Horn's expert report in the following limited way:  On or before **September 28, 2011**, defendant must color-code Dr. Horn's report to identify the limitations of the asserted claims and then to locate them (using the same colors) within Dr. Horn's descriptions of the prior art references.[2]  Defendant may not change the report in any way, nor file any additional papers in connection with this order.  The motion will be discussed at the pretrial conference.

United States District Judge

---

[2]By its memorandum opinion of the same date, the court denies defendant's summary judgment motion on invalidity.  This opportunity does not affect the court's disposition of that motion.

5